# ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA



FILED IN CHAMBERS
U.S.D.C. - Atlanta
JUL 31 2019
By: James N. Hatten, Clerk
Deputy Clerk

IN THE MATTER OF

THE EXTRADITION OF

Akil Jamal WHYTE

CASE NUMBER: 1:19-MJ-647
**UNDER SEAL**

**COMPLAINT FOR PROVISIONAL ARREST
WITH A VIEW TOWARDS EXTRADITION
(18 U.S.C. § 3184)**

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1.   In this matter, I represent the United States in fulfilling its treaty obligation to Canada.

2.   There is an extradition treaty in force between the United States and Canada, the Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, which entered into force on March 22, 1976, and which was amended by the Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. Treaty Doc. No. 101-17 (1990), and by the Second Protocol Amending the Extradition Treaty with Canada of January 12, 2001, U.S.-Can., Jan. 12, 2001, S. Treaty Doc. No. 107-11 (2002) (collectively referenced hereafter as the "Extradition Treaty"). *See* Ex. 1.

3.   The Extradition Treaty provides in Article 11 for the provisional arrest and detention of alleged fugitives pending the submission of a formal request for extradition and supporting documents.

4. In accordance with Article 11 of the Extradition Treaty, the Government of Canada has asked the United States for the provisional arrest of Akil Jamal WHYTE ("WHYTE") with a view towards his extradition.

5. According to the information provided by the Government of Canada, WHYTE is charged with first-degree murder in violation of Section 235(1) of the Criminal Code of Canada. WHYTE is alleged to have committed this offense within the jurisdiction of Canada. A warrant for WHYTE's arrest was issued on September 12, 2017, by Justice of the Peace Paul H. Kowarsky of the Ontario Court of Justice in Toronto, Canada.

6. That warrant was issued on the basis of the following facts:

    a. On April 21, 2017, at 9:35 p.m., Canadian authorities discovered Leonard Pinnock ("Pinnock") dead in the driver's seat of a rental car parked in front of a business plaza in Ontario, Canada. The driver's side door was closed, and the front and rear windows on the driver's side of the car were shattered. Several 40 caliber and 9mm shell casings were recovered from around Pinnock's vehicle.

    b. Footage from video surveillance cameras in the area shows two individuals armed with handguns and wearing dark clothing, including dark-colored hooded sweatshirts ("hoodies"), being dropped off by an SUV on the south side of the plaza. One individual is carrying a bag with a cross-body strap. After being dropped off, the two individuals walk north through the plaza, approach Pinnock's parked car, and fire their handguns into it, discharging several rounds before fleeing the scene on foot.

c. Numerous witnesses also reported hearing gunshots and seeing two people wearing dark clothing and hoodies fleeing through the plaza parking lot. One witness, M.C., reported that Pinnock had been waiting in his car while M.C. was getting his hair braided at a nearby salon.

d. Law enforcement used a police dog to track the suspects' escape route through backyards of the neighborhood surrounding the plaza. Following the police dog's tracking, police located a black Louis Vuitton hoodie with drawstrings of an uneven length, a sock, shoe prints, and a Glock handgun within a few blocks of the plaza.

e. Two months following the shooting, a father and his son, who reside in the neighborhood near the plaza, reported to police that they had found a dark-colored Nike hoodie, a Gucci bag (matching the style of bag seen on the surveillance footage), and a Radom firearm in their backyard. The men stated that they had initially found the hoodie and bag in the yard, which they had left hanging on the back fence for several weeks, and then discovered the firearm concealed under a stack of wood.

f. The Centre for Forensic Sciences ("CFS") conducted forensic analysis of items seized by police in connection with the alleged murder. Based on its analysis, CFS linked the shell casings found next to Pinnock's car to the two firearms seized by police. CFS also developed DNA profiles from the Louis Vuitton hoodie, sock, and bullet cartridges in the Glock. A DNA database match was identified between the DNA profile from the Louis Vuitton hoodie and WHYTE's DNA. There were no database matches for the sock and bullet cartridges.

g. Canadian authorities compared photos of WHYTE with images from the surveillance video of the suspect wearing the Louis Vuitton hoodie. They observed that WHYTE, as captured in a mugshot taken by Toronto Police on April 24, 2016, appears to have the same nose and facial profile structure as the suspect from the surveillance video. Moreover, they observed that WHYTE, as captured in a photo taken by Toronto Police surveillance officers on April 12, 2017 (just over a week before the shooting), and another taken on April 19, 2017 (two days before the shooting), had the same hair style (braids) as the suspect seen on the surveillance video after having discarded his hoodie.

7. The offense with which WHYTE is charged is provided for in Article 2 of the Extradition Treaty.

8. WHYTE may be found within the jurisdiction of this Court.

9. The Government of Canada has represented that it will submit a formal request for extradition supported by the documents specified in the Extradition Treaty, within the time required under the Extradition Treaty.

10. WHYTE would be likely to flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with Title 18, United States Code, Section 3184, and the Treaty between the United States and Canada, and that this Complaint and the Arrest Warrant be placed

under seal of the Court, except as disclosure is needed for its execution, until such time as the warrant is executed.

Ryan J. Huschka
Assistant U.S. Attorney
GA Bar No. 993353

Sworn to before me and subscribed in my presence this 31st day of July, 2019, at Atlanta, Georgia.

Linda T. Walker
United States Magistrate Judge